**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EVAN BRIAN HAAS, MICHAEL SHAHBAZI, | § § § § | Chapter 7 |
| Plaintiffs, | § § | Case No. 15-35586 (DRJ) |
| v. | § § | Adv. Pro. No. 16-03175 (DRJ) |
| NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION | § § § § | **NATIONWIDE CLASS ACTION** |
| Defendants. | § § | |

**PLAINTIFFS' EXPEDITED MOTION AND
INCORPORATED MEMORANDUM IN SUPPORT OF THEIR
MOTION TO COMPEL PER FED. R. CIV. PRO. 26(b)(5)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

*__EXPEDITED RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF, OR IF YOU BELIEVE THAT EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.__*

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

## FOR THE REASONS STATED HEREIN, PLAINTIFFS REQUEST THAT THE COURT CONSIDER, OR HEAR, THIS MOTION ON AN EXPEDITED BASIS ON OR BEFORE JULY 24, 2017

1. Plaintiffs, Evan Brian Haas ("Haas") and Michael Shahbazi ("Shahbazi"), appearing both individually and on behalf of all similarly situated individuals, respectfully move this Court for an order pursuant to Fed. R. Civ. P. 37(a)(3)(B)(ii), (iv) and (d) and Federal Rule of Bankruptcy Procedure 7037, compelling Navient Solutions, LLC ("NSL") and Navient Credit Finance Corporation ("NCFC," together with NSL, "Defendants") to search for responsive documents to, from, or among outside counsel, including employees of outside counsel; and documents to, from, or among defendants' internal legal department, including both lawyers and other employees of defendants' internal legal department; and compelling Defendants to create a log of all responsive documents withheld as privileged pursuant to the requirements of Fed. R. Civ. P. 26(b)(5) (as applicable here under Fed. R. Bankr. P. 7026).

2. The obligation to provide a log of each document withheld as privileged is plain and unambiguous on the face of the Federal Rules, as recognized in this Court and by the Fifth Circuit. *EEOC v. BDO USA, LLP*, 856 F.3d 356, 363-64 (5th Cir. 2017); *Gomez v. Nationwide Prop. & Cas. Ins. Co.*, 2016 WL 6816215, *4 (S.D. Tex. 2/26/2016); *In re Harmon*, 2011 WL 302859, *10 (S.D. Tex. Bankr. 1/26/2011).

3. Defendants' position here that certain of the Plaintiff's *First Requests for Production (as to Class Certification Issues) to Defendants Navient Solutions, LLC and Navient Credit Finance Corporation* (hereafter "First Requests," attached hereto as Exhibit 1) "may" request privileged documents does not absolve Defendants of the duty to

2

specifically invoke the privilege (whether attorney-client privilege, accountant privilege, or otherwise).

4.      Defendants are required to log the specific documents withheld and provide sufficient information under Rule 26(b)(5) to support that invocation of privilege. *See, e.g., Gomez v. Nationwide Prop. & Cas. Ins. Co.*, 2016 WL 6816215, *4 (S.D. Tex. 2/26/2016) ("To the extent that Plaintiff has withheld documents on the basis of privilege, she must produce a privilege log.").

5.      There is no support for Defendants' extreme position here that, not only will they not log the specific documents withheld as *potentially* privileged, they will unilaterally treat potentially privileged documents as non-responsive and not even search for responsive documents within the internal legal department or involving outside counsel in any way.

6.      Plaintiffs move on an expedited basis for this relief, as the relief sought is essential to Plaintiffs' ability to prepare for and take the 30(b)(6) corporate deposition of Defendants on August 31, 2017, and because to date, Defendants have only produced a total of 51 pages of documents to Plaintiffs, despite the discovery deadline on class certification issues, as set forth in the Agreed Upon Scheduling Order (Rec. Doc. No. 134) being less than five months away, on December 14, 2017. If the relief is not granted, Plaintiffs will be unable to timely complete discovery and to fully review and prepare for the 30(b)(6) corporate deposition of Defendants, currently scheduled for August 31, 2017. The date by which expedited hearing is sought is the 24th of July, a week from today, which provides NSL and NCFC with sufficient due process rights pursuant to Fed. R. Bankr. P. 9013.

## I. BACKGROUND

7. On May 26, 2017, Plaintiffs sent to Defendants' counsel Plaintiffs' First Requests.

8. Plaintiffs' First Requests included a prefatory paragraph that defined the Defendants to include "all subsidiaries, or parent corporations, present and former agents, employees, representatives, servants, officers, task force officers, attorneys, consultants, investigators, individuals and all entities acting on behalf or pursuant to [Defendants'] direction."

9. In ¶ 4 of the *Instructions* section of Plaintiffs' First Requests, Plaintiffs instructed:

> Unless otherwise indicated, the use in these Requests of a responding party's name or the name of any party, individual, business organization, or other legal entity, shall specifically include all of that individual's or entity's including all subsidiaries, or parent corporations, present and former agents, employees, representatives, servants, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf or pursuant to your direction.

10. In ¶ 7 of the *Instructions* section of Plaintiffs' First Requests, Plaintiffs instructed:

> In the event that you seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, you are instructed to supply counsel for Plaintiff with a numerical list of document(s) and thing(s) for which privilege or limitation of discovery is claimed….

11. In ¶ 9 of the *Definitions* section of Plaintiffs' First Requests, Plaintiffs defined "**You**," "**Your**," or "**Defendants**" as "Defendants NSL and NCFC, including all subsidiaries, or parent corporations, present and former agents, employees, representatives,

4

servants, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf or pursuant to your direction."

12. In ¶10 of the *Definitions* section of Plaintiffs' First Requests, Plaintiffs defined "**Navient Solutions, LLC**," or "**NSL**" as "Defendant Navient Solutions, LLC, and shall include all subsidiaries, or parent corporations, present and former agents, employees, representatives, servants, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf or pursuant to its direction."

13. In ¶ 11 of the *Definitions* section of Plaintiffs' First Requests, Plaintiffs defined the terms "**Navient Credit Finance Corporation,**" or **"NCFC"** as "Defendant Navient Credit Finance Corporation, and shall include all subsidiaries, or parent corporations, present and former agents, employees, representatives, servants, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf or pursuant to its direction."

14. Plaintiffs' RFP No. 10 requests "All compliance manuals, training materials, or other internal documentation that You distribute to your employees and agents regarding attempts to collect on Consumer Education Loans from borrowers who had declared bankruptcy." This is just one example of many of the First Requests propounded

on Defendants that are likely to call for the identification of responsive documents from the legal department and/or outside counsel.

15. Plaintiffs need the information requested in the First Requests (Request No. 10 used only as an example) in order to meet their burden of establishing a "common policy" that injured all putative class members under Fed. R. Civ P. 23(a).[1]

16. To date, Plaintiffs have identified conflicting information concerning Defendants' treatment of private education loans post-bankruptcy. On the one hand, Defendants have stated to investors and the SEC that *some* private education loans are dischargeable in bankruptcy.[2] On the other hand, Defendants have stated to Plaintiffs and this Court that *no* private education loans are dischargeable in bankruptcy.[3] Further complicating this issue, documents produced to date in this action set forth that Defendants instruct their employees to conduct an individual analysis on each private education loan in bankruptcy to determine if it is dischargeable under section 523(a)(8), and where it is,

---

[1] *M.D. v. Perry*, 294 F.R.D. 7, 26 (S.D.Tex., 2013) (stating that under Rule 23(a), "a plaintiff must identify a unified common policy, practice, or course of conduct that is the source of their alleged injury.").

[2] *See* Navient 2016 2nd Quarter Investor Deck at p. 3, Exhibit 9 to Rec. Doc. No. 100 (stating that Career Training loans, one type of private education loan, are dischargeable in bankruptcy).

[3] *See* Memorandum of Law In Opposition to Plaintiff's Motion for Preliminary Injunction (Rec. Doc. No. 108) at 18, 36 ("Plaintiffs are mistaken when they state that NSL and NCFC were required to seek a determination of whether Plaintiffs' educational loans were discharged … the burden [is on] the debtor to seek a determination of dischargeability and *the loans are viable until such a determination is made*.") (emphasis added).

charge-off the loan and cease collection *prior to a debtor initiating an adversary proceeding*.[4]

17. Given these conflicting disclosures and practices, Plaintiffs believe that documents created by the legal department and/or outside counsel may further illuminate exactly what Defendants' policy is with respect to the treatment of private student loans in bankruptcy — both in theory and in practice. Demonstrating this policy — whether it is official or unspoken[5] — is essential to Plaintiffs demonstrating a "common practice" of illegal behavior suffered by all putative class members.

18. On July 10, Defendants served their *Objections and Responses to Plaintiffs' First Requests for Production (As to Class Certification Issues)* (hereafter "Objections," attached hereto as Exhibit 3) on Plaintiffs' counsel.

19. Defendants' Objections begin with over six pages of *General Objections*.

20. Within the Defendants' *General Objections* are non-specific, blanket assertions of attorney-client and accountant privilege. For example, ¶ 10 of the Defendants' *General Objections* begins:

> Defendants object to the RFPs insofar as they *may* be construed as calling for information subject to a claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the party communication privilege, or any other applicable evidentiary privilege

---

[4] *See* Navient Lending Bankruptcy Policy, dated March 1, 2017, attached hereto as Exhibit 2 ("If Navient receives from the court a Discharge of Debtor, and it is not for a hardship, Navient must determine if the loan is considered a non-dischargeable loan as outlined above. If the loan is determined to be a non-dischargeable education loan, the automatic stay ends, and the loan is placed back into the appropriate loan status . . . *if the loan is determined a dischargeable education loan, the debtor is no longer responsible for the repayment of the loan . . . the loan should be written-off in accordance with the Private Lending Charge-Off Policy.")(emphasis added).*

[5] *M.D. v. Perry,* 294 F.R.D. 7, 26 (S.D.Tex., 2013) ("The policy or practice that a plaintiff identifies need not be formal or officially-adopted.").

7

arising under federal, state, or local law, or under the regulations and laws of any applicable foreign jurisdiction. Defendants have construed the RFPs as not seeking information or documents prepared in anticipation of litigation, information or documents exchanged between counsel or employees of Defendants' internal legal groups, or information or documents exchanged with counsel or internal legal groups for the purpose of seeking or rendering legal advice.

(Emphasis added). And ¶ 13 of Defendants' *General Objections* reads, "Defendants object to the RFPs to the extent they seek documents concerning communications between Defendants and their auditors and/or accountants that are protected from disclosure on the basis of privilege."

21. Defendants' Objections continue with four pages of *Specific Objections to Instructions and Definitions*.

22. Within these additional pages of objections, which precede the actual *Specific Objections and Responses to RFPs*, Defendants continue their non-specific, blanket assertions of privilege:

Defendants object to Instruction 4 on the basis that the definitions and instructions therein include legal counsel and thus call for production of documents that ***may contain*** information or communications protected by the attorney-client privilege, the attorney work product doctrine, or other protection in accordance with Red. R. Civ. P. 26(b)(3)[,]

(Emphasis added).

23. Also within these additional *Specific Objections to Instructions and Definitions*, Defendants specifically object to the instruction (and, as discussed below, affirmative legal obligation) to log the specific documents withheld as privileged:

Defendants object to Instruction 7, and Section III on page 7 of the Requests titled "Privileged or Proprietary Documents," to the extent it attempts to impose the requirement to log documents prepared in anticipation of litigation, documents exchanged between counsel or employees of

8

Defendants' internal legal groups, or documents exchanged with counsel or internal legal groups.

24. On July 11, 2017, Plaintiffs' counsel contacted Defendants' counsel via email, attached hereto as Exhibit 4, questioning particular Defendants' Objections, including whether Defendants were "withholding any documents based on those [general] objections."

25. On July 12, 2017, Plaintiffs' and Defendants' counsel met and conferred via telephone with regard to Defendants' Objections.

26. During that call, Plaintiffs were surprised to hear that Defendants not only were not logging privileged documents, but were not even searching for any documents or communications within Defendants' legal department and within Defendants' communications with outside counsel, regardless of who authored the documents, who else was party to such communications, or whether those communications involved business communications rather than predominantly legal advice.

27. Plaintiffs' counsel followed that conversation with an email inquiry, attached hereto as Exhibit 5, asking for clarification as to whether their understanding as to documents and communications held by legal departments or outside counsel was correct.

28. On July 13, 2017, Defendants' counsel confirmed Plaintiffs' understanding in an email attached hereto as Exhibit 6, writing:

> In regard to General Objection No. 10, responsive documents are being withheld on the basis of this objection. As set forth in the July 10 responses and objections and explained on our call yesterday, defendants construe the RFPs not to seek, and thus **are not searching for and will not log, (a) documents exchanged to, from, or among outside counsel (*including employees of outside counsel*) or defendants' internal legal department (including lawyers and *other employees of defendants' internal legal***

9

*department*), or (b) any other privileged documents created in connection with the defense of this lawsuit.

(Emphases added.)

## II.   ARGUMENT

29.   The Federal Rules of Civil Procedure require that,

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged …, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

30.   There is no provision in the discovery rules in the Federal Rules of Civil Procedure that excepts a party from the specific logging requirement of Fed. R. Civ. P. 26(b)(5), or that otherwise allows a blanket, non-specific invocation of any privilege.

31.   Defendants' position here that certain of the Plaintiffs' First Requests "may" request privileged documents does not absolve Defendants of the duty to specifically invoke the privilege (whether attorney-client privilege, accountant privilege, or otherwise). Defendants are still required to log the specific documents withheld and provide sufficient information under Rule 26(b)(5) to support that invocation of privilege. *See, e.g., Gomez v. Nationwide Prop. & Cas. Ins. Co.*, 2016 WL 6816215, *4 (S.D. Tex. 2/26/2016) ("To the extent that Plaintiff has withheld documents on the basis of privilege, she must produce a privilege log.").

32.   There is no support for Defendants' extreme position here that, not only will they not log the specific documents withheld as *potentially* privileged, they will unilaterally treat potentially privileged documents as non-responsive and not even search for

10

responsive documents within the internal legal department and involving outside counsel in any way.

33. Indeed, "[i]t is fundamental that [Defendants] ha[ve] a duty to produce a privilege log listing withheld documents, even without request from the [Plaintiff]." *In re Harmon*, 2011 WL 302859, *10 (S.D. Tex. Bankr. 1/26/2011) (citing Fed. R. Civ. P. 26(b)(5); Fed. R. Bankr. P. 7026). Clearly, here, Defendants did not meet this fundamental obligation to produce a log of privileged documents, and affirmatively put themselves in a position where meeting that obligation would be impossible, since they have refused to even search for documents where there was a mere possibility that privileged documents might be located.

34. The Defendants' position here is that they need not even search for responsive documents among document custodians (*i.e.*, those involving their internal legal department and external counsel, or employees of either) because responsive documents located through such a search "*may*" include privileged documents. Thus, Defendants have not searched such documents, much less made any document-specific invocation of privilege.

35. "Blanket claims of privilege, generalized descriptions of a document, and conclusory statements that a document is privileged are not sufficient to prove a privilege claim." *EEOC v. BDO USA, LLP*, 856 F.3d 356, 363 (5th Cir. 2017). "Rather, the privilege's proponent must provide the court with enough information to enable the court to determine privilege, and … show by affidavit that precise facts exist to support the claim of privilege." *Id.* (internal quotation marks and citations omitted).

36. Instead of specific invocations of privilege as to discrete documents, Defendants have made "General Objections" and objections to the Instructions and Definitions sections of Plaintiffs' requests, and have provided their attorneys' position statements regarding privilege. The Fifth Circuit has recently rejected this exact approach.

> BDO contends that the position statements it submitted to the EEOC, along with private conversations between the parties, provided the necessary factual underpinnings for its privilege log. This argument is unpersuasive. As the EEOC notes, position statements are not facts to which an affiant competently testifies but rather a compilation of legal theories and factual characterizations made by an attorney."

*Id.* (internal quotation marks and citations omitted).

37. Moreover, there is no basis whereby Defendants may, as a matter of law, presume that communications or other documents involving their in-house or external counsel will necessarily be within a privilege. For example, "[e]mails involving counsel are also problematic, as the log's descriptions do not indicate whether a particular entry consists of one email or a string of emails—a distinction that may be dispositive as to whether the privilege applies." *Id.* at 364 (citations omitted). Here, where there has been *no* log made, because there has been *no search* for responsive documents, this holds doubly true.

38. "There is no presumption that a company's communications with counsel are privileged." *Id.* at 365.

39. "Legal advice, as contrasted with business advice, involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. Courts have held that where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Id.* (internal quotation marks and citations omitted).

12

40. This is particularly true with regard to communications with in-house counsel, "an area courts have acknowledged presents unique challenges when it comes to establishing attorney-client privilege." *Id*. (citation omitted).

41. "It is well-established that the [attorney-client] privilege is the exception to Rule 26's broad disclosure requirements for relevant information and that it must therefore be applied narrowly and with particularity." *Id.* at 366.

42. Here, there is no dispute that Defendants have not even attempted to document or log their invocation of privilege as required by Fed. R. Civ. P. 26(b)(5). Instead, they are operating under a unilateral invocation of a presumption that all documents or communications involving in-house or external counsel (or their employees) may be privileged and therefore are not subject to discovery. This position is as absurd as it is baseless. It leaves no opportunity for this Court or for the Plaintiffs to assess and test the invocation of privilege, as required by the law.

43. Defendants may well identify documents that should be treated as privileged, but they have not even looked.

44. Defendants may well look — albeit only when compelled to by the Court and upon motion practice by the Plaintiffs — and identify documents they believe to be privileged but in fact and law are not privileged, but without an adequate privilege log (or privilege log of any kind) neither this Court nor the Plaintiffs will be able to test that conclusion.

45. Plaintiffs reserve their right to challenge any specific invocation of privilege once a specific invocation is properly made. At this stage, however, Plaintiffs request that this Court compel Defendants to search for all responsive documents, regardless of whether

the records custodian is in-house or external counsel or the employees of such, and to produce all responsive documents pursuant to such search (or to otherwise specifically and properly invoke a privilege as to each withheld document).

46. Alternatively, Plaintiffs request that this Court hold that Defendants have waived the attorney-client privilege as to all communications with in-house and external counsel. *See id.* at 363 ("The law is well-settled that, if a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived.") (internal quotation marks and citation omitted).

47. In addition, because of the intentional failure of Defendants to even search for, much less log as privileged, the documents at issue here, and the lack of any substantial justification or other circumstances for such failure, Plaintiffs are entitled to an award of the reasonable expenses, including attorneys' fees, incurred in bringing this motion. Fed. R. Civ. P. 37(d)(3).

### III. CONCLUSION

Plaintiffs are entitled to an order compelling defendants NSL and NCFC to search for responsive documents to, from, or among outside counsel, including employees of outside counsel; and documents to, from, or among defendants' internal legal department, including both lawyers and other employees of defendants' internal legal department; and compelling Defendants to create a log of all responsive documents withheld as privileged pursuant to the requirements of Fed. R. Civ. P. 26(b)(5) (as applicable here under Fed. R. Bankr. P. 7026).

48. Plaintiffs move on an expedited basis for this relief, as the relief sought is essential to Plaintiffs' ability to prepare for and take the 30(b)(6) corporate deposition of

Defendants on August 31, 2017, and because to date, Defendants have only produced a total of 51 pages of documents to Plaintiffs, despite the discovery deadline on class certification issues, as set forth in the Agreed Upon Scheduling Order (Rec. Doc. No. 134) being less than five months away, on December 14, 2017.

49. If the relief is not granted, Plaintiffs will be unable to timely complete discovery and to fully review and prepare for the 30(b)(6) corporate deposition of Defendants, currently scheduled for August 31, 2017.

50. The date by which expedited hearing is sought is the 24th of July, a week from today, which provides NSL and NCFC with sufficient due process rights pursuant to Fed. R. Bankr. P. 9013.

Respectfully Submitted,

*/s/* Lynn E. Swanson_____
Lynn E. Swanson (*pro hac vice*)
SBN (LA) 22650
JONES, SWANSON, HUDDELL & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508
Lswanson@jonesswanson.com

Jason W. Burge (*pro hac vice*)
SBN (LA) 30420
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jburge@fishmanhaygood.com

Kathryn J. Johnson (*pro hac vice*)
SBN (LA) 36513
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
kjohnson@fishmanhaygood.com

Austin Smith (*pro hac vice*)
SBN (NY) 5377254
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
(917) 992-2121
Austin@acsmithlawgroup.com

Joshua B. Kons (*pro hac vice*)
SBN (IL) 6304853
LAW OFFICES OF JOSHUA B. KONS, LLC
939 West North Avenue, Suite 750
Chicago, IL 60642
(312) 757-2272
joshuakons@konslaw.com

Marc Douglas Myers
SBN (TX) 00797133
ROSS, BANKS, MAY, CRON & CAVIN, P.C.
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com

Adam Corral
SBN (TX) 24080404
CORRAL TRAN SINGH, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
Adam.corral@ctsattorneys.com

***Counsel to Plaintiffs***

**CERTIFICATE OF CONFERENCE**

The undersigned counsel certifies that Plaintiffs' counsel has conferred in good faith with Defendants' counsel, as set forth herein, in order to attempt to resolve this matter without the need for this Court's intervention.

*/s/ Lynn E. Swanson*_____

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 17th day of July, 2017, served a copy of the foregoing upon all counsel of record by CM/ECF filing.

*/s/ Lynn E. Swanson*_____